```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
SANDRA D. THOMPSON,                                                :
                                                                   :
                          Plaintiff,                               :        13 Civ. 1516 (JMF)
                                                                   :
     -v-                                                           :        MEMORANDUM
                                                                   :        OPINION AND ORDER
DEUTSCHE BANK TRUST CORPORATION et al.,                            :
                                                                   :
                          Defendants.                              :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/14/2014

JESSE M. FURMAN, United States District Judge:

Plaintiff Sandra D. Thompson, proceeding *pro se*, sues Deutsche Bank Trust Corporation ("Deutsche Bank"), Seth Waugh, Shari Goldfarb, and Richard O'Connell (together, "Defendants") to recover alleged unpaid pension funds.[1]  Plaintiff's cause of action is best characterized as arising under Section 502(a)(1)(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), which allows a participant to bring a claim to "recover benefits due to [her] under the terms of [her] plan."  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss the complaint.  (Docket No. 14).  For the reasons stated below, Defendants' motion is GRANTED.

---

[1] In earlier pleadings, Plaintiff had also named as a Defendant CT Corporation System. (Compl. (Docket No. 1); Am. Compl. (Docket No. 3)).  Plaintiff later confirmed that CT Corporation System was named by "mistake," and she omitted it from the Second Amended Complaint.  (Pl.'s Mem. Law Aff. Opp'n Mot. ("Pl.'s Mem. Law") (Docket No. 19) ¶ 2.

## BACKGROUND

The following facts, taken from the Second Amended Complaint ("SAC") (Docket No. 20), are assumed to be true for purposes of this motion. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 512 (2d Cir. 2013). Plaintiff is a former Banker's Trust employee. (SAC 2). In the course of her employment, which began on February 5, 1970, she enrolled in three different employee pension plans: the Banker's Trust Pension Plan ("Pension Plan"), the Savings Incentive Plan/Tax Option Program ("SIP"), and the Deductible Employee Contributions Retirement Account ("DECRA"). (*Id.*). On January 19, 1984, she left her employment at Banker's Trust after nearly fourteen years. (*Id.*). Deutsche Bank acquired Banker's Trust in 1999; in due course, the Pension Plan was merged into Deutsche Bank Holdings Corp. Cash Account Pension Plan ("Cash Account Pension Plan") and SIP was merged into the Deutsche Bank Matched Savings Plan. (Defs.' Mem. Law Supp. Mot. To Dismiss ("Defs.' Mem. Law") (Docket No. 15) 1).

From the Cash Account Pension Plan, Plaintiff expected to receive, and until 2008 did receive, monthly benefit payments of $469.01.[2] (SAC 2, 5; *id.*, Ex. 4). As of January 1, 2008, however, Deutsche Bank reduced the monthly payment to $17.01. (*Id.* 5). Plaintiff filed a claim to adjust the monthly rate and to recover the lost payments, which Deutsche Bank denied; she appealed the denial on December 31, 2011. (*Id.*, Ex. 3 at 1). In a letter dated March 7, 2012, Deutsche Bank explained that the denial of her claim was based on Section 9.3(e) of the Pension Plan, or the Age 62 Level Income Option. (*Id.*). Relying on that provision, Deutsche Bank explained that Plaintiff had "receive[d] an enhanced benefit prior to age 62" and that "[t]he reduced monthly benefit bec[ame] effective as of the first day of the month following [her sixty-

---

[2]    One of Plaintiff's exhibits reports the monthly figure as $469.58. (SAC, Ex. 2). The discrepancy is immaterial for purposes of this motion.

2

second] birthday . . . .". (*Id.*). When combined with her Social Security pension, the $17.01 would result in a total of $469.01 each month. (*Id.*, Ex. 4; *see* Defs.' Mem. Law 6).

With respect to the SIP, Plaintiff had expected to receive matched contributions of two dollars for every one dollar she saved, up to a maximum of six percent of her yearly salary. (SAC 2-3). When she left Bankers Trust in 1984, she received from the SIP funds attributable to her own participating contributions — but not, Plaintiff claims, the employer's matching contributions for the prior two years, 1982 and 1983. Plaintiff calculates that those contributions totaled $3,347.00. (*Id.* 8). Deutsche Bank advised Plaintiff that, after a "diligent review" of its archives, it did not find any record of her SIP account. (*Id.*, Ex. 9). Plaintiff reiterated her concerns about the matching SIP funds with Deutsche Bank repeatedly throughout 2011 and 2012. (*Id.*, Ex. 10). The plan administrator denied her claim, but she has not yet appealed. (Goldfarb Decl. (Docket No. 16), Ex. G; *see* Defs.' Mem. Law 8).

On March 6, 2013, Plaintiff filed the instant action. She brings three claims under ERISA. First, she seeks the value of the reduction in her Cash Account Pension Plan from $469.01 to $17.01 since 2008. (SAC 5). Second, she seeks the value of the SIP matched funds, plus interest, for the final two years of her employment with Banker's Trust. (*Id.* 6). Third, alleging that Defendants' treatment of her claims caused "stress, financial trauma, and health issues," including "hair loss, lack of sleep, and emotional trauma," Plaintiff seeks to recover emotional damages. (*Id.* 9). Defendants moved to dismiss those claims as pleaded in her Amended Complaint. (*See* Am. Compl. (Docket No. 3)). Plaintiff subsequently filed a Second Amended Complaint, containing nearly identical claims, as well as a response to Defendants' motion to dismiss. (*See* SAC; Pl.'s Mem. Law; *see also* Defs.' Reply Mem. Law Supp. Mot. To Dismiss ("Defs.' Reply Mem. Law") (Docket No. 24) 1 n.1 (identifying the minimal differences

3

between the two complaints)). Thereafter, Defendants indicated that they relied upon their previously filed motion to dismiss and filed a reply memorandum in response to Plaintiff's opposition. (Defs.' Letter of June 20, 2013 (Docket No. 22); Defs.' Reply Mem. Law).

## DISCUSSION

### A. Legal Standards

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint. *See ATSI Commnc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Plaintiff here is proceeding *pro se*. Accordingly, her submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court must "construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alteration omitted). In other words, the "duty to liberally construe a

plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Id.* (alteration in original) (internal quotation marks omitted).

**B.      Pension Payments from the Cash Account Pension Plan**

Plaintiff, in her first claim, seeks to recoup the reductions in her monthly payments from the Cash Account Pension Plan since 2008. When a pension plan grants discretion to the plan administrator to consider claims, a court reviews the administrator's decisions for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); *Duncan v. Cigna Life Ins. Co. of N.Y.*, 507 F. App'x 61, 62 (2d Cir. 2013) (summary order) ("[W]e review the administrator's interpretation of benefits for abuse of discretion."). Under that deferential standard, a court "may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

Here, the Cash Account Pension Plan gives discretion to the plan administrator (Goldfarb Decl., Ex. E at 15; *see also* Defs.' Mem. Law 10),[3] and there is no basis to overturn the administrator's decision to deny Plaintiff's claim. Indeed, the administrator's decision is supported by evidence in the record and is not in error. The terms of the Cash Account Pension Plan outline the Social Security Leveling option. Section 9.3(e) specifies that the member receives "a reduced pension . . . so that [the] pension . . . will be approximately equal to the sum

---

[3]     Defendants submit, and rely on, the June 2003 Deutsche Bank Cash Account Pension Plan Summary Plan Description ("SPD") (*see* Goldfarb Decl., Ex. F) and excerpts from the Deutsche Bank Cash Account Pension Plan (*id.*, Ex. A). Although those documents postdate Plaintiff's employment at Bankers Trust, she does not argue that the plans in effect during her employment materially differed from the plans in the record.

of his pension and his old-age Social Security benefit after such earliest age as estimated at his Benefit Starting Date." (Goldfarb Decl., Ex. A at 36). The March 7, 2012 letter from the plan administrator explains that, under the terms of the Cash Account Pension Plan, "[t]he reduced monthly benefit bec[ame] effective as of the first day of the month following [Plaintiff's sixty-second] birthday" and that, combined with the Social Security pension, the $17.01 would result in a total of $469.01 each month. (SAC, Ex. 3 at 1). That analysis plainly follows the terms set out in Section 9.3(e) of the Plan. Because the administrator's decision is in accordance with the terms of the Plan, the decision was not in error and certainly not an abuse of discretion. Accordingly, Plaintiff's first claim is dismissed.

**C.     Distribution of Matching SIP Contributions**

In her second claim, Plaintiff seeks the matched contributions from the SIP for her last two years of employment at Banker's Trust. (SAC 6-8). Defendants argue that the Court should dismiss this claim as premature because "that claim is still in the process of being determined by the plan administrator." (Defs.' Mem. Law 11). The Court agrees.

Courts have interpreted ERISA to contain an exhaustion requirement. *See, e.g.*, *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) (citing *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006)), *cert. denied*, 134 S. Ct. 241. Benefits claims under ERISA must therefore pass through the administrative review process before they are considered in federal court. *See, e.g.*, *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (noting that there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases" (internal quotation marks omitted)); *cf. Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ("[P]ermitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator[] preserves the 'careful

balancing' on which ERISA is based.  Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation."). Although the exhaustion requirement "is not absolute," *Kirkendall*, 707 F.3d at 179, to avoid dismissal a plaintiff must "make a clear and positive showing that pursuing available administrative remedies would be futile." *Paese*, 449 F.3d at 444.

      Here, Plaintiff has not exhausted her administrative remedies with respect to the SIP claim.  Deutsche Bank investigated Plaintiff's claim and came to the determination that her SIP Balance was $0.  (Goldfarb Decl., Ex. G at 2).  Deutsche Bank communicated that finding to Plaintiff through a series of telephone calls and a September 1, 2008 letter from Christopher Nelson, Deutsche Bank Vice President and Counsel.  (*Id.* at 1).  It stated that "[a] diligent review of the existing records has failed to produce documentation supporting [Plaintiff's] claim of an account balance."  (*Id.*)  In the course of this litigation, Deutsche Bank sent another letter, dated May 6, 2013, to "set[] out in writing" its complete findings regarding the SIP claim.  (Goldfarb Decl., Ex. G).  In that letter, the plan administrator stated the reasons for denial of Plaintiff's claim and explained that Plaintiff had "the right to appeal the denial of [her] claim."  (*Id.* at 3).  It further explained that should the Benefits Committee deny her appeal, she would then have a right to bring a civil action under Section 502(a) of ERISA.  (*Id.*).  As of the time this motion was briefed, however, Plaintiff had not pursued that appeal.  Further, Plaintiff has made no showing that the Court should excuse the fact that she has not yet exhausted her administrative remedies because pursuing the appeal with Deutsche Bank would be futile.  That she has "made a concerted effort" to resolve the matter before turning to the Court and that she may sense "the reluctance of Deutsche Bank's Officers" (Pl.'s Mem. Law 2) does not mean that an appeal would

be futile or merit exempting Plaintiff from the ERISA exhaustion requirement. Accordingly, Plaintiff's second claim is dismissed.

**D.     Emotional Damages**

Finally, Plaintiff seeks emotional damages for "stress, financial trauma, and health issues" allegedly caused by Defendants' responses to her claims. (SAC 9). Such damages are not available under ERISA, as the Second Circuit has interpreted "the plain language of the statute" to not "provide for monetary relief." *Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993). Nor are they available under the common law, as ERISA preempts any claim that "relates to" an ERISA plan and its administration, as Plaintiff's claim plainly does. *See, e.g.*, *Barton v. Martha Stewart Living Omnimedia, Inc.*, 12 Civ. 0881 (LTS), 2012 WL 4068576, at *2, (S.D.N.Y. Sept. 17, 2012) ("ERISA preempts any and all state law claims that 'relate to' an employee benefit plan." (quoting 29 U.S.C. § 1144)); *Prince v. Am. Airlines, Inc.*, No. 97 Civ. 7231 (RWS), 1999 WL 796178, at *9 (S.D.N.Y Oct. 6, 1999) ("ERISA preempts any common-law claim for damages insofar as it relates to any employee benefit plan within its coverage.") Further, even if Plaintiff could pursue a common law claim for intentional or negligent infliction of emotional distress, the claim would fail. To state either a claim, a plaintiff must plead "extreme and outrageous conduct." *Miller v. Int'l Paper Co.*, 12 Civ. 7071 (LAK) (JLC), 2013 WL 3833038, at *8 (S.D.N.Y. July 24, 2013). Specifically, "[t]he conduct in question must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013) (internal quotation marks omitted). Here, Plaintiff's allegations that Defendants gave her the "runaround" do not even come close to

meeting that standard. (SAC 9). Accordingly, Plaintiff's third claim — for emotional damages — is dismissed as well.

## CONCLUSION

Defendants' motion to dismiss is GRANTED, and the Complaint is dismissed in its entirety.[4] The Clerk of Court is directed to terminate Docket No. 14, to close the case, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED.

Dated: February 14, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[4] In their motion, Defendants argue that Plaintiff's claims against Deutsche Bank and Waugh should be dismissed on the ground that they are not proper parties. (Defs.' Mem. Law 9-10). In light of the foregoing, the Court need not address that argument.